**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

DEREK WILLIAMS,

                      Plaintiff,

    - v -                                  Civ. No. 9:11-CV-29
                                                (GTS/RFT)

A. ROBERTS, *Deputy Super. Adj., Washington Correctional Facility*; J. JOHNSON, *Correctional Officer, Washington Correctional Facility*; M. YAHW,[1] *Correctional Officer, Washington Correctional Facility*; LT. EDWARDS, *Washington Correctional Facility*; and YAKI, *Iman, Washington Correctional Facility*,

                      Defendants.

**APPEARANCES:**                            **OF COUNSEL:**

DEREK WILLIAMS
Plaintiff, *Pro Se*
165 Weyl Street
Apt. #1
Rochester, New York 14621

HON. ERIC T. SCHNEIDERMAN        CHARLES J. QUACKENBUSH, ESQ.
Attorney General of the State of New York   Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, New York 12224

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER

*Pro se* Plaintiff Derek Williams brings this civil rights action, pursuant to 42 U.S.C. § 1983, alleging that while he was incarcerated at Washington Correctional Facility, the Defendants violated his constitutional rights protected under the First, Eighth, Eleventh, and Fourteenth Amendments, as well as his rights protected by the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc, *et seq.* Dkt. No. 1, Compl. Pending before this Court is

---

[1] According to papers submitted by the Defendants, the correct spelling of this party's name is "Yaw," thus the Court will refer to him by the correct spelling and the Clerk of the Court is directed to update the Docket Report to reflect this change. *See* Dkt. Nos. 8 & 11.

Defendants' Motion to Dismiss, filed pursuant to Federal Rule of Civil Procedure 12(b)(6), Dkt. No. 11, which Plaintiff opposes, Dkt. No. 17. For the reasons that follow, it is hereby recommended that Defendants' Motion be **granted** and this case be **dismissed**.

### I. ALLEGATIONS IN THE COMPLAINT

In accordance with the applicable standard of review, the following facts derived from the Complaint[2] are taken as true.

In October and November 2007, Plaintiff was in the custody of the New York State Department of Corrections and Community Supervision (DOCCS) and was housed in the Washington Correctional Facility.[3] During this time period, Plaintiff received Misbehavior Reports on two separate occasions for, essentially, failing to comply with count procedures and direct orders. Compl. at p. 3. Plaintiff asserts that for both incidents, he was engaging in cell prayer in accordance with his membership in the Nation of Islam. *Id*. Because Defendants have moved for dismissal of the Complaint attacking the timeliness of the action, we will discuss the relevant time line associated with both incidents.

On October 23, 2007,[4] Plaintiff received a Misbehavior Report from Defendant C.O. Johnson

---

[2] Plaintiff's Complaint is comprised of the following: Complaint; Memorandum of Law; Affidavit in Support of Memorandum of Law; Exhibit One, Excerpted Copy of the Nation of Islam Prayer Book; Exhibit Two, Inmate Grievance Packet; and, Exhibit Three, Copy of Inmate Misbehavior Reports. Because all these purportedly separate documents are enveloped into one continuous document, we consider them all to be a part of the Complaint and all citation references thereto are to the page numbers automatically assigned by the Court's Case Management Electronic Case Files system.

[3] Upon information and belief, Plaintiff was released on parole on November 2, 2010. *See* Dkt. No. 1, Compl., at p. 9; *see also* DOCCS Inmate Information, *available at* http://nysdocslookup.docs.state.ny.us (last visited November 25, 2011, search for Department Identification Number ("DIN") 06-B-0593).

[4] There appears to be a discrepancy regarding the date of this incident. In his Complaint, Plaintiff lists October 23, 2007, as the date this incident took place, however, the Misbehavior Report, which he attaches to his Complaint, lists October 22, 2007, as the date of the incident. While, in accordance with the applicable standard of review, we've taken the date recited in the Complaint as the true date, the discrepancy has no bearing on our overall analysis.

for violating Prison Rules 106.10 (direct order), 112.21 (count procedures), and 104.13 (disturbance). Compl. at p. 19. Plaintiff asserts that at the time, he was engaged in Islamic prayer in his cell. *Id*. at p. 3. According to the Misbehavior Report accompanying the Complaint, Plaintiff disobeyed a direct order to sit on his bed and comply with count procedure, to which Plaintiff rebuffed, shouting that he was praying. *Id*. at p. 19. Plaintiff was immediately placed in confinement pending his hearing on the Misbehavior Report. *Id*. at p. 3. On October 25, 2007, Defendant Lieutenant Edwards conducted a Hearing on the Misbehavior Report, finding Plaintiff guilty of all three charges and sentencing him to keeplock for thirty days, with accompanying loss of privileges.[5] *Id*. at p. 20. Also on that date, Plaintiff appealed the Hearing disposition asserting that his faith requires prayer at fixed times, and that practice has never before interfered with count procedures. *Id*. at p. 25. On October 31, 2007, Defendant Roberts affirmed the Hearing disposition, noting that Plaintiff must comply with legitimate directives given by facility staff; Defendant Roberts also indicated that he conferred with Defendant Iman Yaki, who stated that he would counsel Plaintiff regarding prayer times. *Id*.

On November 6, 2007,[6] Plaintiff received another Misbehavior Report for alleged non-compliance with count procedure. *Id*. at pp. 3 & 22. The Misbehavior Report, authored by Defendant Yaw, charged Plaintiff with violating Prison Rules 104.13 (disrupting order of facility),

---

[5] According to the Hearing Disposition, the keeplock penalty, which was supposed to start on October 25, 2007, was suspended for thirty days and deferred for ninety days. Without the benefit of a hearing transcript and full disciplinary report, it is not entirely clear whether Plaintiff served any portion of the keeplock sentence and there is no discussion of his sentence in the Complaint. The corresponding thirty-day loss of privileges was set to commence on November 6, 2007, and expire on December 6, 2007. Compl. at p. 20.

[6] Once again, there is a discrepancy within the Complaint regarding the date of this incident. In his Complaint, Plaintiff states he was issued a second Misbehavior Report on November 6, 2007, while the Exhibit attached to the Complaint indicates that the date of the incident was November 5, 2007. Compl. at pp. 3 & 22. Again, we've taken the date recited in the Complaint as the true date and note that it has no bearing on our overall analysis.

106.10 (direct order), 112.20 (delaying count procedure), and 112.21 (facility count procedures). *Id.* at p. 22. Again, Plaintiff asserts that he was engaging in prayer at the time he was ordered to sit on his bunk in compliance with count procedures. *Id.* On November 14, 2007, Defendant Edwards initiated a Disciplinary Hearing and dismissed all charges as "untimely." *Id.* at pp. 23-24.

According to the Complaint and documents incorporated thereto, Plaintiff filed one Inmate Grievance, on October 22, 2007,[7] relative to the issue of prayer interruption. *Id.* at p.15. By that Grievance, Plaintiff complained that on October 22nd, his early afternoon prayer, as mandated by his religion, was interrupted; he further complained about receiving a disciplinary infraction and for being placed on keeplock status. *Id.* It is not clear whether the Inmate Grievance Review Committee (IGRC) issued a decision on the Grievance, however, Plaintiff provides a decision, dated November 15, 2007, wherein the Superintendent denied Plaintiff's Grievance noting that during count procedures, inmates must be sitting on their beds without exception and that prayers within a prisoner's cube are allowed, but must not interfere with count procedures. *Id.* at p. 16. The decision also noted that Defendant Iman Yaki advised that there is no obligation to pray during count times and that Plaintiff must "make adjustments in order to be in compliance with facility procedures." *Id.* Plaintiff appealed that decision on November 28, 2007, asserting, based upon his understanding of the Holy Qur'an and past prayer participation, that Iman Yaki is incorrect.[8] *Id.*

---

[7] It is not clear when this Grievance was processed by the facility. The handwritten Grievance attached to the Complaint is dated October 22, 2007, and bears no facility stamp. Compl. at p. 15. The ensuing decisions on this Grievance each reflect a filing date of November 1, 2007. *Id.* at pp. 16 & 17. As with the other discrepancies, it has no bearing on our overall analysis.

[8] Attached to the Complaint is an excerpt from the Nation of Islams Prayer Book. Compl. at pp. 11-13. According to such excerpt, there are five daily prayers for Muslims:
1. THE DAWN or EARLY MORNING prayer (known in Arabic as *Fajr*), which is performed at daybreak and before sunrise.
2. THE EARLY AFTERNOON prayer (known in Arabic as *Zuhr*), which is performed shortly *after*

(continued...)

On January 9, 2008, the Central Office Review Committee (CORC) denied Plaintiff's appeal for the reasons stated by the Superintendent. *Id*. at p. 17.

Plaintiff asserts that on or about April 24, 2008, he filed an Article 78 petition in New York State court challenging the Misbehavior Reports and complaining that he was punished for practicing his religion. *Id*. at p. 8. For various reasons, Plaintiff "allowed" his case to be dismissed, opting to pursue remedies in this Court. *Id*. at p. 4. He does not provide a date when that petition was dismissed. On or about November 2, 2010, Plaintiff was released on parole. Thereafter, on January 10, 2011, he filed the within civil rights Complaint pursuant to 42 U.S.C. § 1983.

## II. DISCUSSION

### A. Standard of Review

On a motion to dismiss, the allegations of the complaint must be accepted as true. *See Cruz v. Beto*, 405 U.S. 319, 322 (1972). The trial court's function "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980). "The issue is not whether a plaintiff will

---

[8](...continued)
the noon hour.
3. THE LATE AFTERNOON prayer (known in Arabic as *Asr*), which is performed around four o'clock in the afternoon, or close to two hours *before* sunset time.
4. THE SUNSET or EVENING prayer (known in Arabic as *Maghrib*), which is performed just *after* the sunset.
5. THE LATE EVENING or NIGHTFALL prayer (known in Arabic as *Isha*), which is performed nearly two hours *after* the sunset time or before retiring.

It says in the Holy Qur'an Sharrieff (4:103), "Prayer indeed has been enjoined on the believers at fixed times." In other words, it is essential that each prayer be performed at the *appointed hour*.

The exact time for each prayer will, of course, differ from coast to coast, especially when "Daylight Saving Time" is in force. To be sure of the precise hours, therefore, consult your Temple Minister.

*Id*.

Plaintiff never states which daily prayer was interrupted by Defendants Johnson and Yaw, thought both Misbehavior Reports reflect that the incidents occurred at approximately 3:00 p.m. *Id*. at pp. 19 & 22.

ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (*overruled on other grounds by Davis v. Scherer*, 468 U.S. 183 (1984)).

"Generally, in determining a 12(b)(6) motion, the court may only consider those matters alleged in the complaint, documents attached to the complaint, and matters to which the court may take judicial notice." *Spence v. Senkowski*, 1997 WL 394667, at *2 (N.D.N.Y. July 3, 1997) (citing *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991)). Moreover, "even if not attached or incorporated by reference, a document 'upon which [the complaint] *solely* relies and which is *integral to the complaint*' may be considered by the court in ruling on such a motion." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991)).

The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *See Retail Clerks Intern. Ass'n, Local 1625, AFL-CIO v. Schermerhorn*, 373 U.S. 746, 754 n. 6 (1963); *see also Arar v. Ashcroft*, 532 F.3d 157, 168 (2d Cir. 2008). Nevertheless, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937, 1949 (2009). Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted).

A motion to dismiss pursuant to Rule 12(b)(6) may not be granted so long as the plaintiff's complaint includes "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. at 1960 (citing

*Twombly*).⁹ "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. at 1949. This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. In this respect, to survive dismissal, a plaintiff "must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 440 U.S. at 555). Thus, in spite of the deference the court is bound to give to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts [which he or she] has not alleged, or that the defendants have violated the . . . laws in ways that have not been alleged." *Assoc. Gen. Contractors of California, Inc. v. California State Council of Carpenters,* 459 U.S. 519, 526 (1983). The process of determining whether a plaintiff has "nudged [his] claims . . . across the line from conceivable to plausible," entails a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. at 1950-51.

### B. Plaintiff's Claims

As noted above, Plaintiff asserts that his rights protected under the First, Eighth, Eleventh, and Fourteenth Amendments were violated when the Defendants penalized him for engaging in prayer in his cell at times that he believes have been designated by his religion. He further asserts

---

⁹ By its opinion in *Bell Atlantic Corp. v. Twombly* and then again in *Ashcroft v. Iqbal*, the Supreme Court abrogated the often-cited language of *Conley v. Gibson* "that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 561-63 (2007) (quoting *Conley*, 355 U.S. 41, 45-46 (1957)). In so doing, the Court found that *Conley* "described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival." *Id*. at 563.

that the Defendants violated his rights protected by RLUIPA. Defendants assert that Plaintiff's Fourteenth Amendment Due Process claims are time barred, his RLUIPA claims are barred by the Eleventh Amendment, and, with regard to the First Amendment and RLUIPA claims, Defendants are entitled to qualified immunity.[10]

### 1. Due Process Claim

In his Complaint, Plaintiff does not enunciate the alleged due process infirmities that he believes plagued his two Disciplinary Hearings. Thus, it is not clear to this Court how Plaintiff's Due Process rights were violated during his October 25th and November 14th Disciplinary Hearings. Nor, for that matter, has Plaintiff described what liberty interests he was deprived of as a result of the two Hearings. *Sandin v. Conner*, 515 U.S. 472, 484 (1995) (noting that a prisoner wishing to pursue a due process claim must show that as a result of insufficient process, he was deprived of some liberty interest). Stated another way, Plaintiff has not shown that either Disciplinary Hearing resulted in a sanction that was atypical and significant in comparison to the ordinary incidents of prison life thereby triggering Due Process protections. *Id.* (stating that an inmate has no constitutional right to any procedural safeguards unless the deprivation imposed an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life"). Indeed, Plaintiff would be hard-pressed to identify any procedural violation occurring during the November 14th Hearing, wherein the charges were dismissed and no punishment ensued.

Instead, it appears that the entirety of Plaintiff's Due Process claims rest upon the notion that his religious prayers were inappropriately interrupted on two occasions and he was thereafter unduly

---

[10] Defendants do not put forth any argument regarding the purported Eighth or Eleventh Amendment claims. Nevertheless, as noted herein, Plaintiff fails to adequately state a cause of action pursuant to these two Amendments. *See infra* Part II.B.4.

punished for engaging in such prayer and, by extension, for practicing his religion. While these allegations may suffice at this juncture to support a claim that his First Amendment rights were denied, it does not support a claim for the denial of procedural Due Process under the Fourteenth Amendment. On this basis alone, we could easily recommend dismissal of the Due Process claims for failure to state a claim. However, were this to be our recommendation, we would feel compelled to allow Plaintiff to amend his Complaint in order to expand upon the Due Process violations that occurred and the particular liberty interests at stake. *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (quoting several cases for the proposition that a court should not dismiss a *pro se* complaint without first granting leave to amend if there is any indication that a valid claim could be stated). Such amendment, however, would be futile because, as Defendants suggest, the statute of limitations has run on this claim, and no amendment of the Complaint could cure this defect. *See Grace v. Rosenstock*, 228 F.3d 40, 53 (2d Cir. 2000) (noting that while leave to amend should ordinarily be freely granted, the court has discretion to deny such amendment as futile if the claim would be barred by the applicable statute of limitations).

In § 1983 actions, the applicable statute of limitations is the State's "general or residual statute for personal injury actions." *Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002) (quoting *Owens v. Okure*, 488 U.S. 235, 249-50 (1989)) (alterations omitted). In New York, a three-year statute of limitations applies for personal injury actions and thus to § 1983 actions. *Id.*; *see also* N.Y.C.P.L.R. § 214(5). Although State law provides the relevant limitations period, federal law determines when a § 1983 action accrues, which has been held to be the time "when the plaintiff knows or has reason to know of the harm." *Connolly v. McCall*, 254 F.3d 36, 41 (2d Cir. 2001) (citation omitted). Thus, in determining when a particular claim accrues, courts must focus on when

a "plaintiff becomes aware that he is suffering from a wrong for which damages may be recovered in a civil action." *Singleton v. City of New York*, 632 F.2d 185, 192 (2d Cir. 1980).

In this case, Plaintiff filed his Complaint on January 10, 2011; for any § 1983 claim to be considered timely filed, it must have accrued no earlier than January 10, 2008.

Courts in this District have generally set the accrual date for procedural Due Process claims related to disciplinary hearings either at the date of the disciplinary hearing or at the date the prisoner's final administrative appeal is decided. *Odom v. Calero*, 2008 WL 449677, at *6-7 (S.D.N.Y. Feb. 19, 2008); *Abbas v. Dixon*, 2004 WL 2202640, at *2 (W.D.N.Y. Sept. 30, 2004).[11] In this case, Plaintiff's Hearings were held on October 25 and November 14, 2007, and those are the relevant dates when Plaintiff was, or should have been, aware of any Due Process violations that ensued.  Therefore, for the Due Process claims asserted against Defendant Edwards, who presided over both Disciplinary Hearings, the limitations period expired on October 25 and November 14, 2010, respectively.  To the extent Plaintiff asserts a Due Process claim against Defendant Roberts for affirming the October 25th conviction/sentence, such claim accrued on October 31, 2007, the date when the Superintendent confirmed the October 25th conviction/sentence, and thus expired on October 31, 2010.[12]

---

[11] Citing the Supreme Court's decision in *Heck v. Humphrey*, 512 U.S. 477, 490 (1994), Defendants suggest that the Due Process claim accrues on the date the conviction/sentence has been invalidated and state that Plaintiff was "'aggrieved' for time bar analysis purposes as of October 31, 2007 when the Superintendent affirmed the convictions/sentence." Dkt. No. 11-1 at p. 5.  In *Heck* the Supreme Court held that if a decision in the plaintiff's favor would invalidate the underlying conviction in some manner, the § 1983 claim is not cognizable until the prisoner can show that such conviction has been invalidated through appeal or some other mechanism.  There is nothing in the current Complaint that would suggest that the sentence meted out on October 25th affected the overall length or duration of Plaintiff's sentence in any manner.  Thus, the accrual rule set forth in *Heck* does not apply.

[12] The precise accrual date for the due process claims may also be affected by a recent Second Circuit decision which held that the time during which a prisoner exhausts his administrative remedies, as required by the Prisoner Litigation Reform Act, 42 U.S.C. § 1997e(a), is omitted from the limitations period; in other words, the statute of limitations is equitably tolled during the Plaintiff's pursuit of complete exhaustion.  *See Gonzalez v. Hasty*, 651 F.3d 318,
(continued...)

Because the statute of limitations expired prior to Plaintiff bringing the within action, we recommend that Defendants' Motion to Dismiss be **granted** as to the Due Process claims asserted against Defendants Edwards and Roberts.[13]

### 2. RLUIPA

RLUIPA "protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion." *Cutter v. Wilkinson*, 544 U.S. 709, 723 (2005). RLUIPA provides that

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person –
> (1) is in furtherance of a compelling governmental interest; and
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a).

Recently, the Supreme Court declared that monetary damages are unavailable to litigants pursuing claims under RLUIPA. *Sossamon v. Texas*, __ U.S. __, 131 S.Ct. 1651 (2011). The Court held that

---

[12](...continued) 323-24 (2d Cir. 2011). It is not clear whether the Second Circuit intended to extend the *Gonzalez* holding to a Due Process claim, wherein the exhaustion requirement is satisfied not through the prisoner grievance program but through administrative appeal. Nor is it clear whether the PLRA applies to Plaintiff Williams who filed this action when he was no longer in jail. We need not speculate on either front since even utilizing the latter date of October 31, 2007, and omitting the six days between the disciplinary Hearing and the appeal determination, Plaintiff's Due Process claims are time-barred.

We also note that Plaintiff's filing of an Article 78 proceeding in New York State court on April 24, 2008, which was thereafter dismissed on some unspecified date, has no effect on the statute of limitations calculation. Although federal law determines when the claim accrues, state tolling rules determine whether the limitations period has been tolled. *Bd. of Regents v. Tomanio*, 446 U.S. 478, 484-86 (1980). The Second Circuit has held that, in accordance with New York law, the filing of an Article 78 petition does not toll the limitations period. *See Abbas v. Dixon*, 480 F.3d 636, 641 (2d Cir. 2007) (cited in *LeBron v. Swaitek*, 2007 WL 3254373, at *2 (N.D.N.Y. Nov. 2, 2007)).

[13] Defendants have not moved for dismissal of any other claim under the theory that the statute of limitations has expired. We note that RLUIPA has a statute of limitations of four years, and thus appears to be timely filed. *See* 28 U.S.C. § 1658(a). It is debatable whether the First Amendment claims have expired prior to the filing of the Complaint. Again, because Defendants have not moved on this basis, we do not consider this issue, but we note that the recent holding in *Gonzalez v. Hasty*, 651 F.3d 318 (2d Cir. 2011), could affect the limitations period, and by our calculation, it appears that Plaintiff may have filed this action on the last date of such period.

the acceptance of federal funds did not mean that the States consented to waiving their sovereign immunity to suits for money damages. *Id*. at 1655 & 1658-59 (noting that the waiver of sovereign immunity for monetary relief must be unambiguously stated, and RLUIPA's authorization of "appropriate relief against a government" does not meet this test). Thus, any request for monetary damages under RLUIPA should be **dismissed.**

What's left then of Plaintiff's RLUIPA claim is the request for injunctive relief, which includes 1) expungement of his institutional record with regard to these incidents; and 2) internal investigation by DOCCS to determine whether Defendants should keep their jobs, if they haven't already retired. Compl. at p. 6. Defendants argue that because Plaintiff is no longer in DOCCS's custody, this claim is moot. Dkt. No. 11-1 at pp. 5-6. We agree.

"The mootness doctrine is derived from Article III of the Constitution, which provides that federal courts may decide only live cases or controversies. . . . This case-or-controversy requirement subsists through all stages of federal judicial proceedings, trial and appellate." *Van Wie v. Pataki*, 267 F.3d 109, 113 (2d Cir. 2001) (internal quotation marks and citations omitted); *see also North Carolina v. Rice*, 404 U.S. 244, 246 (1971). A federal court has no authority to decide an issue when the relief sought can no longer be given, or is no longer needed. *Martin-Trigona v. Shiff*, 702 F.2d 380, 386 (2d Cir. 1983). The courts have recognized a narrow exception to this rule for repetitive conduct, although only in exceptional circumstances. *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983). Generally only where the plaintiff "can make a reasonable showing that he will again be subjected to the alleged illegality" would such exception apply. *Id*.; *see also Spencer v. Kemna*, 523 U.S. 1, 17 (1998) (citing *Lyons* for the proposition that the capable of repetition doctrine applies when the conduct at issue is of insufficient duration to permit it to be fully litigated

and is reasonably likely to reoccur).

Where, as here, a prisoner has been released from prison, his claims for injunctive relief based on the conditions of his incarceration must be dismissed as moot. *Hallett v. New York State Dep't of Corr. Servs.*, 109 F. Supp. 2d 190, 196 (S.D.N.Y. 2000). And, the limited exception for repetitive conduct does not appear to be applicable in this instance. Thus, before even getting to the merits of Plaintiff's RLUIPA claim, we recommend that Defendants' Motion to Dismiss be **granted** as the Court lacks jurisdiction over a moot claim.[14]

### 3. Qualified Immunity

The doctrine of qualified immunity shields public officials from suit for conduct undertaken in the course of their duties if it "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Eng v. Coughlin*, 858 F.2d 889, 895 (2d Cir. 1988). Qualified immunity is an affirmative defense that must be pleaded by the official claiming it. *Satchell v. Dilworth*, 745 F.2d 781, 784 (2d Cir. 1984) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982)).

The only pleading filed in the present case thus far is the Complaint. Defendants have not raised this affirmative defense in a responsive pleading as set forth in Federal Rule of Civil Procedure 8(c), but rather in their Memorandum of Law in support of their Motion to Dismiss. Generally, "the defense of qualified immunity cannot support the grant of a . . . 12(b)(6) motion for failure to state a claim upon which relief can be granted." *Green v. Maraio*, 722 F.2d 1013, 1018 (2d Cir. 1983); *see also McKenna v. Wright*, 386 F.3d 432, 435 (2d Cir. 2004) (quoting *Green*).

---

[14] As an aside, were we to get to the merits of Plaintiff's RLUIPA claim, the Supreme Court's pronouncement that RLUIPA does not "elevate accommodation of religious observances over an institution's need to maintain order and safety" would certainly weigh heavily against Plaintiff. *Cutter v. Wilkinson*, 544 U.S. 709, 722 (2005).

However, an exception to this general rule exists where the complaint itself sets up, on its face, the qualified immunity defense; on such an occasion, dismissal for failure to state a claim would be appropriate. *Roniger v. McCall*, 22 F. Supp. 2d 156, 162 (S.D.N.Y. 1998) (citing *Green v. Maraio*, 722 F.2d at 1019); *see also McKenna v. Wright*, 386 F.3d at 435.

We readily acknowledge, and Plaintiff does not contest, that the Complaint, on its face, sets up the qualified immunity defense. Until recently, courts faced with the qualified immunity defense applied the procedure mandated in *Saucier v. Katz*, 533 U.S. 194 (2001), whereby a court must first decide whether the facts alleged, or shown, make out a violation of a constitutional right, and if so, whether the right at issue was "clearly established" at the time of the alleged misconduct. 533 U.S. at 201-02. Recently, however, the Supreme Court softened the rigid approach enunciated in *Saucier*. *See Pearson v. Callahan*, 555 U.S. 223 (2009). Now, the *Saucier* two-pronged test is not mandated in terms of the order in which the prongs may be addressed, though the sequence of review may remain appropriate or beneficial. *Id*. at 818.

In light of *Pearson*, we need not decide in the first instance whether Defendants violated Plaintiff's First Amendment rights. Rather, we may get to the heart of the matter and address whether Plaintiff had a clearly established right to pray in his cell at any time he wishes without interruption.

"A right is 'clearly established' when '[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Jackler v. Byrne*, 658 F.3d 225, 242-43 (2d Cir. 2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "In determining if a right is clearly established, [courts] look to whether (1) it was defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has confirmed the existence of the

right, and (3) a reasonable defendant would have understood that his conduct was unlawful." *Doninger v. Niehoff*, 642 F.3d 334, 345 (2d Cir. 2011) (citation omitted). A qualified immunity analysis must be "undertaken in light of the specific context of the case, not as a broad general proposition." *Id*. (quoting *Saucier v. Katz*, 533 U.S. at 201).

The First Amendment to the United States Constitution provides, in pertinent part, that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. CONST. amend. I. These provisions are applicable to the states through the Due Process Clause of the Fourteenth Amendment. *See, e.g.*, *Gitlow v. New York*, 268 U.S. 652, 666 (1925) (cited in *Wares v. Vanbebber*, 319 F. Supp. 2d 1237, 1243 (D. Kan. 2004)). Prisoners retain their right to religious freedom even when incarcerated. *Pell v. Procunier*, 417 U.S. 817, 822 (1974); *Jackson v. Mann*, 196 F.3d 316, 320 (2d Cir. 1999). Such rights, however, are balanced against the "interests of prison officials charged with complex duties arising from administration of the penal system." *Benjamin v. Coughlin*, 905 F.2d 571, 574 (2d Cir. 1990). Free exercise claims of prisoners are therefore "judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." *Farid v. Smith*, 850 F.2d 917, 925 (2d Cir. 1988) (quoting *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987)); *see also Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003).

Pursuant to this reasonableness test, a prison regulation that impinges upon an inmate's constitutional rights may be valid, despite such encroachment, if it is reasonably related to legitimate penological interests. *Turner v. Safley*, 482 U.S. 78, 89 (1987); *Farid v. Smith*, 850 F.2d at 925. In this case, it is not entirely clear whether Plaintiff feels that the count procedure itself encroached upon his religious freedom, or if it was simply the individualized acts of Defendants Johnson and

Yaw. Nevertheless, an individualized decision to "deny a prisoner the ability to engage in some requested religious practice" is analyzed in the same manner as a prison regulation denying such exercise. *Ford v. McGinnis*, 352 F.3d at 595 n.15 (citing *Young v. Coughlin*, 866 F.2d 567 (2d Cir. 1989)).

Pointedly, neither the Supreme Court nor the Second Circuit has held that brief interruption to prayers performed inside a jail cell for the purpose of conducting security inmate counts is violative of the First Amendment. In fact, all jurisprudence states otherwise, to wit, as noted above, a prisoner's First Amendment right to free exercise may be limited, as long as such limitations are reasonably related to legitimate penological interests. The security interests in conducting an inmate count at set times during the day cannot be understated. And, in such instances, the courts typically defer such security decisions to those in the corrections arena. *Bell v. Wolfish*, 441 U.S. 520, 547-48 (1979); *see also Ochoa v. Connell*, 2007 WL 3049889, at *7 (N.D.N.Y. Oct. 18, 2007) (noting that "while some accommodations are to be made for a prisoner's sincerely held religious beliefs, we questions whether such accommodations reasonably include converting a cell into a sacrosanct venue so that no visitor could ever trespass over the threshold of the cell doors whenever the occupant deemed it appropriate to engage in prayer"). Therefore, without a clearly established right to engage in uninterrupted prayer in one's cell in the face of a legitimate penological interest, and because Defendants Johnson and Yaw acted reasonably, they are entitled to the qualified immunity defense and their Motion should be **granted** on this basis.

*4. Remaining Claims*

Plaintiff notes in his Complaint that Defendants violated his Eighth and Eleventh Amendment rights. It is not clear in what way Defendants trampled upon such rights, nor can this Court reasonably discern such a claim from the facts alleged in the Complaint. Thus, we recommend, pursuant to 28 U.S.C. § 1915(e), that such claims be dismissed for failure to state a claim upon which relief could be granted.

### III. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendants' Motion to Dismiss (Dkt. No. 11) be **granted** and this case be **dismissed**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Date:  December 15, 2011
       Albany, New York

Randolph F. Treece
U.S. Magistrate Judge